846 A.2d 341

Linda Ann SPENCER

v.

MARYLAND STATE BOARD OF PHARMACY.

No. 36, Sept. Term, 2003.

Court of Appeals of Maryland.

March 11, 2004.

Reconsideration Denied May 6, 2004.

516

Joseph S. Kaufman (Schulman & Kaufman, LLC, on brief), Baltimore, for petitioner.

Paul J. Ballard, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Linda M. Bethman, Staff Atty., on brief), for respondent.

**518**

Argued before BELL, C.J., RAKER, WILNER, CATHELL, BATTAGLIA, LAWRENCE F. RODOWSKY, (retired, specially assigned), THEODORE G. BLOOM, (retired, specially assigned), JJ.

RAKER, J.

This case arises out of a decision by the Maryland State Board of Pharmacy, an administrative agency. The decision was reviewed first by the Circuit Court for Baltimore City and then by the Court of Special Appeals, 150 Md.App. 138, 819 A.2d 383 (2003). Petitioner sought review of the decision by the Court of Special Appeals because the remedy that court fashioned, she contends, exceeded its authority and violated the Maryland Constitution and Administrative Procedure Act, Md.Code (1984, 1999 Repl.Vol., 2003 Cum.Supp.) §§ 10–101 to 10–305 of the State Government Article [hereinafter APA].[1]

Whether a court has exceeded its statutory and judicial authority over an administrative agency is a question that involves the constitutional balance of power between the judiciary and executive administrative agencies. That balance of power is governed by an established area of administrative law dealing with the scope of judicial review over the various types of administrative agency decisions. In this case, we consider whether the Court of Special Appeals exercised the proper standard of judicial review over an administrative agency decision in a matter that is committed, ultimately, to the agency's discretion.

**I.**

Linda Ann Spencer, a pharmacist, continued to practice pharmacy after her license expired on July 1, 1999. On

---

1. Except where otherwise indicated, all future statutory references shall be to provisions in the Administrative Procedure Act, Md.Code (1984, 1999 Repl.Vol., 2003 Cum.Supp.) §§ 10–101 to 10–305 of the State Government Article.

August 16, 1999, Spencer's supervisor, having confirmed with the Maryland State Board of Pharmacy ("the Board") the expiration and non-renewal of Spencer's pharmacy license, instructed Spencer to cease practicing pharmacy, which she did. Spencer then contacted the Board to inquire why her license had not been renewed, asserting that she had timely submitted the required renewal application. An internal review of the Board's office records, however, indicated that no application or accompanying fee was received. Spencer surmised that her application had been lost in the mail and therefore submitted a renewal application to the Board on August 30, 1999. Although her application included certification that she had acquired the requisite number of continuing education credits, the majority of those credits were obtained after her license had expired in June. Nevertheless, the Board granted Spencer's renewal application on September 14, 1999, after which Spencer resumed her practice of pharmacy.

The Court of Special Appeals described the remaining events that led to this appeal as follows (referring to the Board as "appellant" and to Spencer as "appellee"):

"Appellant issued charges against appellee on February 16, 2000, alleging that she had practiced pharmacy without a license for a period of six weeks and that she had failed to maintain records of required continuing education credits. Appellant scheduled a case resolution conference (CRC) to attempt to resolve the matter without the necessity of a hearing. Mr. Stanton Ades and Ms. Laura Schneider, two members of the Board, represented appellant at the CRC. The settlement negotiations were unsuccessful. Both Mr. Ades and Ms. Schneider sat on the panel of Board members who eventually heard this contested case. On many occasions, beginning in July 2000, appellee sent letters to counsel for appellant, seeking to have the matter referred to the Office of Administrative Hearings (OAH). Appellee believed appellant incapable of giving her a fair and impartial hearing because appellant had been intimately involved in settlement negotiations with appellee and may have prejudged the case. Appellant repeatedly denied appellee's

requests to move the case to OAH, stating that appellant's knowledge of settlement negotiations did not disqualify it from hearing evidence. In further justification for refusing to move the case, appellant stated that appellee 'failed to assign any specific facts indicating the Board would not be an impartial arbiter,' and also noted that the Board 'ha[d] never delegated a matter to the Office of Administrative Hearings.'

"Finally, on August 14, 2000, appellee filed a motion to refer the case to the Office of Administrative Hearings or, in the alternative, to recuse members of the Board. Appellant denied that motion on September 15, 2000.

"Appellant held a hearing on the matter on September 20, 2000, and resumed the hearing on January 8, 2001. Counsel for appellant had given books containing exhibits to the members of the Board on the morning of the hearing. When counsel for appellee arrived for the hearing, he noticed that at least one member of the Board was reviewing evidence before the start of the hearing. Counsel for appellee complained about the member reviewing documents that were not in evidence, and asked that member to recuse himself. This request was denied. He then renewed the motion to move the case to OAH and appellant denied that motion also. Finally, counsel for appellee asked that the two members who were involved in settlement negotiations recuse themselves, and that request was also denied.

"Appellee did not dispute that she had practiced pharmacy without a license for a period of six weeks. Her counsel argued, however, that her practice of pharmacy without a license was authorized under Md.Code (1984, 1999 Repl. Vol.), § 10–226(b) of the State Government Article, because she had submitted a timely renewal application. Appellee did not present any evidence, other than her testimony, that she had filed a renewal application prior to the expiration of her license on July 1, 1999. Appellant's records did not reveal any application, check, or money order from appellee prior to July 1, 1999. Appellant determined that appellee's

testimony on the matter lacked credibility and found that she had not filed a timely renewal application.

"During the hearing, counsel for appellee accused members of the Board of prejudging the case, of sleeping during the hearing, and of not paying attention to testimony. After the accusation about sleeping, the hearing deteriorated to the point where several members of the Board engaged in a heated conversation with counsel for appellee involving demands for apologies and chastisements about finger pointing from counsel and members of the Board. Finally, one of the Board members asked counsel for appellee to leave the room, but he remained and continued arguing. Eventually, counsel was asked if he would act appropriately, and he said he would, so the hearing continued.

"Later, counsel for appellee objected to the entry of a mail log, and argued that it 'does not go to [appellee's] credibility.' Ms. Hawkins, one of the Board members, stated 'sure it does.' When counsel then said to the Board, 'Ms. Hawkins already said out loud it went to credibility,' Ms. Hawkins denied saying it and then added, 'I did not [say that], and you're a bold-faced liar.' Counsel for appellee objected to being called a liar during the proceeding and attempted to have Ms. Hawkins removed from hearing the case, but that request was denied.

"On February 21, 2001, appellant issued its Final Decision and Order, finding that appellee had violated Md.Code (1981, 2000 Repl.Vol.), §§ 12–301, 12–701, 12–707(e), and 12–313(b)(24) of the Health Occupations Article. Appellant placed appellee on probation, imposed a fine, and reprimanded her."

150 Md.App. at 142–46, 819 A.2d at 385–87 (footnotes omitted).

Spencer then filed a Petition for Judicial Review in the Circuit Court for Baltimore City, alleging, *inter alia*, that she had been deprived of procedural due process because Mr. Ades and Ms. Schneider participated both as representatives of the Board in settlement negotiations and as members of the panel adjudicating her case. Agreeing with Spencer's argu-

ments, the Circuit Court vacated and reversed the Board's Final Decision and Order. The Circuit Court ruled that there was not substantial evidence in the record to support the Board's decision; that the Board's renewal of Spencer's license pending the outcome of the investigation operated as a waiver of the violations subsequently found by the Board; and that Spencer had been deprived of due process as a result of the arguments that took place at the Board hearing between her attorney and two Board members.

The Board appealed the Circuit Court's ruling to the Court of Special Appeals. The Court of Special Appeals agreed with the Circuit Court that Spencer was denied her right to a fair and unbiased hearing, focusing on Ms. Hawkins' accusation that Spencer's counsel was a "bold-faced liar." The intermediate appellate court reversed the Circuit Court's ruling that the Board's renewal of Spencer's license had foreclosed the Board from taking disciplinary action against her. Consequently, it remanded the case to the Circuit Court "with instructions to remand the case to the Board, directing [the Board] to delegate the authority to conduct the contested case hearing and to issue the final administrative decision in this case to the OAH." 150 Md.App. at 155, 819 A.2d at 393.

Spencer then filed a petition for writ of certiorari in this Court. 376 Md. 49, 827 A.2d 112 (2003). Although petitioner has phrased the first question for our review as whether the Court of Special Appeals, by its order to the administrative agency to refer the case to the OAH, violated Article 8 of the Declaration of Rights and § 10–205 of the APA, a more accurate way of formulating the question, as we explain *infra,* is whether the Court of Special Appeals afforded the administrative agency the proper level of deference in a matter committed to the agency's discretion. Petitioner's second question is whether the order to remand the matter to the OAH contravened either *res judicata* or double jeopardy principles as applied to administrative proceedings.

Petitioner argues that the Court of Special Appeals exceeded its judicial authority when it fashioned a remedy that

interfered with the Board's discretion to determine whether her case should be remanded to the OAH. She contends that the Court of Special Appeals violated Article 8 of the Declaration of Rights in ordering the Board to send the case to the OAH, because in so doing, that court performed a "nonjudicial function," violating the constitutional mandate that the power of the three branches of government in Maryland "be forever separate and distinct." *See Dep't of Nat. Res. v. Linchester Sand & Gravel Corp.*, 274 Md. 211, 334 A.2d 514 (1975). Petitioner also argues that because § 10–205 of the APA does not explicitly authorize the courts to delegate matters to the OAH, the Court of Special Appeals did not have authority to do so. Although the Board, as respondent, initially opposed these arguments in its Answer to Petition for Writ of Certiorari, in its brief, respondent reversed course and now agrees with petitioner that the Court of Special Appeals performed a non-judicial function in violation of Article 8.

This Court, of course, is not bound by the concessions made by the parties on issues of law, which we may independently review. *See In re Heather B.*, 369 Md. 257, 266 n. 9, 799 A.2d 397, 402 n. 9 (2002). But we agree with both parties that the Court of Special Appeals exceeded its authority when it compelled the Board to exercise discretion the Legislature explicitly granted to the administrative agency. We therefore will reverse in part the intermediate appellate court's judgment and remand the matter to the Board.[2]

## II.

We address first the procedural and analytical posture of this case as it comes before this Court. When this Court sits in review of an administrative agency decision, we reevalu-

---

**2.** Because of the reasoning of our opinion, we will decline to address the constitutional arguments posed by the parties, for this Court regularly has adhered to the principle that we will not reach a constitutional issue when a case can be disposed of properly on a non-constitutional ground. *Piscatelli v. Liquor Board,* 378 Md. 623, 629–30, 837 A.2d 931, 935 (2003).

ate the decision of the agency under the same statutory standards as would the circuit court; we do not employ those standards to reevaluate the decision of the circuit or intermediate appellate court. *See Division of Labor v. Triangle General Contractors, Inc.,* 366 Md. 407, 416, 784 A.2d 534, 539 (2001); *Dept. of Health v. Campbell,* 364 Md. 108, 123, 771 A.2d 1051, 1060 (2001) (noting that it is the final decision at the administrative level, not the decision of the reviewing court, which is the focus of each level of judicial review). Thus, as to the merits of such a matter, ordinarily and primarily, the inquiry is not whether the Court of Special Appeals erred, but whether the administrative agency erred.

In the present case, in what way might the Board have erred? The answer to this question lies with the two disputed administrative actions taken by the Board that were reversed by the Court of Special Appeals. Petitioner's original motion to the Board requested either (a) that her case be referred to the Office of Administrative Hearings or, in the alternative, (b) that the Board members who participated in the settlement negotiations recuse themselves. Petitioner asked the Circuit Court to review both the denial of the recusal motion and the denial of the motion to remove to the OAH. These two denials by the Board constitute the two administrative decisions which petitioner asked the Circuit Court and the Court of Special Appeals to review.

The Court of Special Appeals, disagreeing with the Board's denial of both of those requests, held as follows:

"In light of the actions by the Board that caused an appearance of impropriety in the proceedings in this case before the Board, this Court holds that the circuit court did not err by finding that appellee was denied due process in that hearing. Consequently, we remand this case to the Circuit Court for Baltimore City with instructions to remand the case to the Board, directing appellant to delegate the authority to conduct the contested case hearing and to issue the final administrative decision in this case to the OAH."

150 Md.App. at 155, 819 A.2d at 393. Critical to understanding this case is the observation that the intermediate appellate court's analysis amounted to a simultaneous review of *two separate administrative actions:* (1) the Board's failure to recuse certain members of the panel and (2) the Board's failure to refer the case to the OAH. Although the Court of Special Appeals apparently considered the agency's failure to recuse the biased panel members to go hand-in-hand with the failure to refer the case to the OAH, we think it clear that the determination that "the actions of the Board members created an appearance of impropriety and unfairness" is separate and distinct from the determination that "the case must be retried before [the OAH]." For even if the Board was required to recuse the biased members from the adjudicating panel, it was not logically bound to refer the case to the OAH. The Board could have easily complied with the court's judgment by replacing the biased members, yet persisted in its decision to forgo the OAH. Thus, those determinations were two distinct decisions by the agency, both of which were reviewed by the Court of Special Appeals.

With respect to the agency decision denying the recusal motion, the Court of Special Appeals held that "the actions by the Board that caused an appearance of impropriety in the proceedings in this case before the Board ... denied [petitioner] due process in that hearing." *Id.*; *cf. Maryland State Police v. Zeigler,* 330 Md. 540, 559, 625 A.2d 914, 923 (1993) (stating that "[p]rocedural due process, guaranteed to persons in this State by Article 24 of the Maryland Declaration of Rights, requires that administrative agencies performing adjudicatory or quasi-judicial functions observe basic principles of fairness as to parties appearing before them"). Petitioner, of course, is satisfied with that ruling and did not raise that issue in the petition for certiorari, and neither did respondent cross-petition on that issue. Accordingly, we do not review that ruling by the Court of Special Appeals. *See Mehrling v. Nationwide,* 371 Md. 40, 44 n. 3, 806 A.2d 662, 665 n. 3 (2002) (noting that the Court of Appeals will not normally address a question not presented in petition for certiorari), and upon

remand, the Board must adhere to the court's ruling as it bears on the defects in procedural due process at petitioner's hearing.

It is the second administrative decision taken by the Board, and its review by the Court of Special Appeals, that concerns us in the case *sub judice*. By this we mean the Court of Special Appeals's holding "directing [the Board] to delegate the authority to conduct the contested case hearing and to issue the final administrative decision in this case to the OAH." The key point here is that the Court of Special Appeals judicially reviewed the Board's decision to deny the motion to refer the case to the OAH, and it found that decision to be wanting. The court's reasoning behind its determination is made in a footnote to its opinion:

> "We recognize that 'under the APA, the delegation of matters to the OAH is not a mandatory function but a function within the discretion of the administrative agency.' [*Regan v. Board of Chiropractic*, 120 Md.App. 494, 513, 707 A.2d 891, 900 (1998).] In light of the facts of this particular case, however, it would not be appropriate to remand the case to the same tribunal that heard the case originally. * * * In this case, we have held that the actions of the Board members created an appearance of impropriety and unfairness, and for that reason, the case must be retried before a different tribunal."

150 Md.App. at 156 n.14, 819 A.2d at 393 n.14. We do not think it so obvious that this case "must" be retried before the OAH, and the Court of Special Appeals did not discuss the appropriate standard of judicial review of the Board's decision not to refer. Because the Court of Special Appeals did not consider the appropriate standard of judicial review and whether, under that standard, the agency's decision must be overturned, that task is now before this Court, as we sit in review of the agency's action and not so much the decision by the intermediate appellate court. Therefore, this case requires us (1) to determine the proper standard of review to apply to the Board's decision not to refer the case to the OAH

and (2) applying that standard, to determine whether the Board's decision should be upheld.

## III.

 Whether the administrative agency's refusal to delegate to the OAH was improper requires us to determine the standard of review for such an agency decision. The standard of review for an agency decision, in turn, will depend upon the level of discretion delegated to the administrative agency with respect to such decisions. *See MTA v. King*, 369 Md. 274, 293–94, 799 A.2d 1246, 1257 (2002) (Wilner, J., concurring); *Hecht v. Crook*, 184 Md. 271, 280–81, 40 A.2d 673, 677 (1945); *see generally* A. Rochvarg, *Maryland Administrative Law*, §§ 4.29–4.38 (2001); E. Tomlinson, *The Maryland Administrative Procedure Act*, 56 Md. L.Rev. 196 (1997).

To discover the proper standard of judicial review, we begin with the APA. Because this case involves an agency acting in a "quasi-judicial" capacity, adjudicating the personal rights of petitioner, judicial review is governed by § 10–222, which is applicable to final decisions in contested cases. *See* § 10–222(a). Were we reviewing the agency acting in its policy-making or "quasi-legislative" capacity, a wholly different analysis governs the decision. *See* § 10–125; *Fogle v. H & G Restaurant, Inc.*, 337 Md. 441, 654 A.2d 449 (1995).

Section 10–222(h) governs the scope of judicial review of final administrative agency decisions in contested cases as follows:

(h) *Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

Section 10–222(h)(3)(i)–(vi) provides a statutory framework for understanding the scope of judicial review of agency decisions and is of particular interest to the case *sub judice*. Section 10–222(h)(3)(i)–(iv) deals with judicial review of agency conclusions of law. Section 10–222(h)(3)(v) deals with judicial review of agency factual determinations. Section 10–222(h)(3)(vi) deals with judicial review of any other agency determination— for instance, as in the case *sub judice,* determinations over matters committed to the agency's discretion. Our jurisprudence has expanded on the meaning of these statutory provisions and provided guidance for their application by the courts.

■ When an agency makes "conclusions of law" in a contested case, the court, on judicial review, decides the correctness of the agency's conclusions and may substitute the court's judgment for that of the agency's. *Total AV v. Dept. of Labor,* 360 Md. 387, 394, 758 A.2d 124, 127–28 (2000) (noting that questions of law addressed by administrative agency are completely subject to review by courts, although agency's interpretation of a statute may be entitled to some deference). This established principle of administrative law is exemplified in § 10–222(h)(3)(i)–(iv), which permits judicial modification or reversal of agency action that (i) is unconstitutional; (ii) exceeds the agency's jurisdiction; (iii) results from unlawful procedure; or (iv) is affected by "any other" error of law. *See* Tomlinson, *supra,* at 215 n. 131 ("Questions of law encompass the first four grounds listed in the judicial review provision of the APA"). Section 10–222(h)(3)(iv), by authorizing correction of *"any other* error of law," implicitly indicates (a) that courts retain authority to correct *all* ("any") errors of law and (b) an understanding that agency errors based upon the previous

three provisions are also considered to be *legal* errors ("any *other* error of *law* ").[3]

 In contrast, when an agency is not interpreting law but instead makes a "finding of fact," we have applied "substantial evidence" review. Substantial evidence review of agency factual findings is embodied in § 10–222(h)(3)(v). That provision grants a court authority to overrule an agency's factual finding only when the finding is "unsupported by competent, material, and substantial evidence in light of the entire record as submitted." According to this more deferential standard of review, judicial review of agency factual findings is limited to ascertaining whether a reasoning mind could have reached the same factual conclusions reached by the agency on the record before it. *See Stansbury v. Jones*, 372 Md. 172, 182–185, 812 A.2d 312, 318–320 (2002) (discussing substantial evidence review in Maryland).

 Finally, there are circumstances when an agency acts neither as a finder of fact nor as an interpreter of law but rather in a "discretionary" capacity. *See, e.g., Maryland State Police v. Zeigler*, 330 Md. 540, 625 A.2d 914. Logically, the courts owe a higher level of deference to functions specifically committed to the agency's discretion than they do to an agency's legal conclusions or factual findings. Therefore, the discretionary functions of the agency must be reviewed under a standard more deferential than either the *de novo* review afforded an agency's legal conclusions or the substantial evidence review afforded an agency's factual findings. In this regard, the standard set forth in § 10–222(h)(3)(vi), review of "arbitrary or capricious" agency actions, provides guidance for

---

**3.** Even in the case of an agency interpreting law, our jurisprudence has shown a level of deference to an agency's interpretation of law, provided the agency is interpreting its own regulations, *MTA v. King* 369 Md. 274, 288–89, 799 A.2d 1246, 1254 (2002), or is interpreting the statute it administers, *Jordan v. Hebbville*, 369 Md. 439, 450, 800 A.2d 768, 775 (2002). Nevertheless, erroneous interpretations of law are never binding upon the courts. *State Ethics v. Antonetti*, 365 Md. 428, 447, 780 A.2d 1154, 1166 (2001).

the courts as they seek to apply the correct standard of review to discretionary functions of the agency.[4]

This Court recently applied the arbitrary or capricious standard of review to discretionary functions of the agency in a case closely analogous to this one. *Maryland State Police v. Zeigler* involved an administrative agency's decision to reopen a hearing after it had already begun deliberations on the matter. In that case, we first determined that the decision to reopen a hearing for additional evidence was committed to the agency's discretion. 330 Md. at 557–58, 625 A.2d at 922. As a discretionary function of the agency, the decision to reopen the hearing, we said, was subject to judicial review, but only under the arbitrary or capricious standard. Judge Eldridge, writing for the Court, observed:

---

4. Although a few of our cases appear to conflate substantial evidence review with arbitrary or capricious review, *see, e.g., Insurance Comm'r v. Nat'l Bureau of Cas. Underwriters,* 248 Md. 292, 300–01, 236 A.2d 282, 286 (1967), it does not follow that they are one and the same. The substantial evidence test applies to agency findings of fact, as indicated by the very language of § 10–222(h)(3)(v) ("evidence" supported by the whole "record"). Arbitrary and capricious review, on the other hand, could conceivably apply to any action of the agency not covered by the other provisions of § 10–222(h)(3).

We do not encounter, or decide, this issue of whether the arbitrary and capricious standard in § 10–222(h)(3)(vi) will govern every type of agency action not encompassed by § 10–222(h)(3)(i)(v). *See Maryland State Police v. Zeigler,* 330 Md. 540, 569–570, 625 A.2d 914, 928 (1993) (Bell, J., dissenting); A. Rochvarg, *Maryland Administrative Law,* § 4.38 (2001). It is notable, however, that in contrast to the first five grounds for judicial review in § 10–222(h)(3)(i)–(v), § 10–222(h)(3)(vi) does not delineate the *type* of agency decision to which it applies, *cf.* § 10–222(h)(3)(i)–(iv) (implicitly and necessarily involving *legal* determinations by the agency); § 10–222(h)(3)(vi) (explicitly applying to evidentiary, factual findings), and could conceivably be a "catch-all" standard of review for any other agency action. And even in the absence of an applicable statutory scheme providing for judicial review, we have held an implied limitation upon an administrative agency's authority is that its decisions "be not arbitrary or capricious." *Bucktail, LLC v. County Council of Talbot County,* 352 Md. 530, 550, 723 A.2d 440, 449 (1999); see also our line of cases explaining mandamus actions as they apply to ministerial or non-discretionary functions of administrative agencies, discussed in *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 500–504, 331 A.2d 55, 65–66 (1975).

"[A]s long as an administrative agency's exercise of discretion does not violate regulations, statutes, common law principles, due process and other constitutional requirements, it is ordinarily unreviewable by the courts. It is only when an agency's exercise of discretion, in an adjudicatory proceeding, is 'arbitrary' or 'capricious' that courts are authorized to intervene [citing the provision now codified as 10–222(h)(vi), the arbitrary and capricious standard of review]."

*Id.* (citations omitted).

Similarly, in *MTA v. King,* we held that an agency's discretion to determine the magnitude of a sanction could only be reviewed pursuant to § 10–222(h)(3)(vi), *i.e.,* for arbitrariness or capriciousness. 369 Md. at 291, 799 A.2d at 1255–56. Even if the court felt the punishment to be "disproportionate" to the violation, the agency's determination of the amount or level of sanction could not be second-guessed, unless the sanction "was so extreme and egregious that the reviewing court can properly deem the decision to be 'arbitrary or capricious,' " as set forth in § 10–222(h)(3)(vi). *Id.*

The case *sub judice* does not differ significantly from *Zeigler* or *King* in that the decision being reviewed is also one committed to the agency's discretion and is to be reviewed under the same arbitrary or capricious standard set forth in 10–222(h)(3)(vi). Whether an action is in fact deemed arbitrary or capricious will vary depending upon the amount of discretion granted an agency, a matter of substantive law, *see King,* 369 Md. at 293–94, 799 A.2d at 1257 (Wilner, J., concurring); thus, the level of discretion afforded an agency's decision to reopen a hearing, as in *Zeigler,* may differ from the discretion afforded an agency's decision to forgo the OAH, as in the instant case. Arbitrary and capricious review will apply to both types of decisions, but whether the agency's decision in each case is actually arbitrary or capricious will correspond to the discretion afforded it.

Applying the legal principles outlined above, we hold that (1) the determination by an agency to refer a case to the

OAH is a matter committed to its discretion and that (2) the Board did not abuse that discretion under the arbitrary or capricious standard.

First, it is clear that the Board's refusal to refer the case to the OAH was not a legal conclusion or a factual finding but rather a function of the Board's discretion. The discretion is granted to the Board in § 10–205(b)[5] which declares an "agency *may* delegate to the Office [of Administrative Hearings] the authority" (emphasis added) to hear the case.[6] The word "may" connotes a permissive, discretionary function of the agency when it delegates a case to the OAH. *See Brodsky v. Brodsky*, 319 Md. 92, 98, 570 A.2d 1235, 1237 (1990); *Maryland–National Capital Park and Planning Comm. v. Silkor Development Corp.*, 246 Md. 516, 522, 229 A.2d 135, 139 (1967) (construing the word "may" to signal the ordinary meaning of permission unless the context or the purpose of the statute shows that it is meant to be imperative); *see also Regan*, 120 Md.App. at 513, 707 A.2d at 900 (noting that under the APA, the delegation of matters to the OAH is not a mandatory function but a function within the discretion of the administrative agency). Nor was the Board *required* to send the case to the OAH, because logically there existed other

---

**5.** Section 10–205(b) provides for the delegation of a contested case to the OAH:

(b) *Scope of authority delegated.*—An agency may delegate to the Office [of Administrative Hearings] the authority to issue:

(1) proposed or final findings of fact;

(2) proposed or final conclusions of law;

(3) proposed or final findings of fact and conclusions of law;

(4) proposed or final orders or orders under Article 49B of the Code; or

(5) the final administrative decision of an agency in a contested case.

**6.** Although it is our understanding that, as a matter of practice, most state agencies subject to the APA exercise their authority to delegate duties to the OAH by regulation or administrative order and usually in broad categories of case types, there appears no reason why an agency may not do so on an *ad hoc* basis in a given case. We do not here address whether an agency's violation of its own established protocol with regard to OAH delegation may somehow amount to arbitrary or capricious agency action.

options to the Board, such as recusing the offending members and replacing them with different members, or, pursuant to § 10–205(b), referring to the OAH the authority to make a proposed decision but retaining for itself the ultimate authority to decide the case. In fact, the Board may very well decide to send the case to the OAH; but if it does so, it shall not be under the auspices or compulsion of the judiciary.

 Second, it is clear that the Board's decision to forgo the OAH was not arbitrary or capricious. An agency's prerogative with respect to case referral to the OAH is similar in scope to that of the agency's prerogative in determining the severity of sanctions, *see King*, 369 Md. at 291, 799 A.2d at 1255–56; *Resetar v. State Bd. of Education*, 284 Md. 537, 562, 399 A.2d 225, 238 (1979) ("It is impossible to catalogue just what would or would not constitute arbitrary action on the part of an administrative agency . . . in imposing sanctions"), or to that of forgoing prosecution of a particular individual. In such cases, it is most difficult to apply or even articulate a judicial standard by which the agency's discretionary decision might be deemed arbitrary or capricious, *cf. Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (holding that the FDA's decision not to take enforcement actions was not subject to judicial review under the federal APA because such enforcement decisions are "committed to agency discretion by law" and do not supply the courts with "law to apply," that is, a legal standard to which the agency can be held). The reviewing court, absent some showing of fraud or egregious behavior on behalf of the agency, will be hard pressed to articulate a reason why the agency acted arbitrarily or capriciously when it did not send the case to the OAH. This is true for the case before us today. Even conceding the error of the Board's failure to recuse certain members from the panel, that alone does not suffice to render arbitrary or capricious the Board's decision not to refer to the OAH. The Court of Special Appeals erred when it reviewed this discretionary function and found the agency wanting and incapable of conducting a fair hearing and rendering a fair decision.

To be sure, because of the nature of the Board members participating, it was improper for those members who participated in the settlement negotiations to remain as panel members adjudicating petitioner's case, and those members may not constitute a part of the panel if or when petitioner's case is reheard.[7] But that did not by itself require referral to the OAH, as any number of other options lay open to the Board. The proper course, in view of the Board's discretion to refer, was to remand the case to the Board with instructions to cure the defects the reviewing court found at the original hearing, but without a mandate requiring referral of the case to the OAH. That is what we shall do, and the lower court's direction regarding referral of the case to the OAH is reversed.

## IV.

Petitioner's final argument, that a remand will create issues of *res judicata* or double jeopardy, is without merit and frivolous. The Board's enforcement of its licensing and disciplinary requirements serve purposes essential to the protection of the public, which are deemed remedial, rather than punitive, and therefore are not subject to double jeopardy principles. *See State v. Jones*, 340 Md. 235, 666 A.2d 128 (1995); *Ward v. Dept. of Pub. Saf. & Cor. Services*, 339 Md. 343, 350, 663 A.2d 66, 69 (1995) (holding that where the purpose of the penalty is remedial, it is not punishment for double jeopardy purposes); *McDonnell v. Comm'n on Medi-*

---

7. ·We do not adopt a *per se* rule of recusal, nor do we intend our holding or comments to imply that recusal is mandatory when a trial judge participates in settlement negotiations. *See* Maryland Rule 16–813, Maryland Code of Judicial Conduct, Canon 3 (setting forth the situations requiring mandatory recusal); *see also* Annot., *Judge's Comments– Urging Settlement*, 6 A.L.R.3d 1457 (1966). In the instant case, as the· Court of Special Appeals aptly noted, two of the Board members participated in settlement discussions with Spencer. 150 Md.App. 138, 150, 819 A.2d 383, 390 (2003). The Board considered the settlement negotiations in rendering its final decision, noting in the Order that "[a]lthough the Respondent agreed to a proposal at the conference, she later rejected it." It is the overall appearance of impropriety in this case that requires recusal.

*cal Discipline,* 301 Md. 426, 436, 483 A.2d 76, 81 (1984) (noting that the "purpose of disciplinary proceedings against licensed professionals is not to punish the offender but rather as a catharsis for the profession and a prophylactic for the public"). Even if double jeopardy was applicable, which it is not, the rehearing would not be precluded, as a new trial (or rehearing) ordinarily is not precluded by double jeopardy principles when a conviction is reversed on grounds other than sufficiency of the evidence. *Huffington v. State,* 302 Md. 184, 189, 486 A.2d 200, 203 (1983). The remand was not based on insufficiency of evidence but on defects in procedure.

Neither is *res judicata* applicable in this case because there is no final judgment—the case is still on appellate review—and because issue and claim preclusion require a subsequent cause of action in which those doctrines may take effect; this appeal is not a subsequent cause of action but all part of the same case. *See Murray International v. Graham,* 315 Md. 543, 547, 555 A.2d 502, 504 (1989) (noting that *res judicata* principles preserve the conclusive effect of judgments, "except on appeal or other direct review," and quoting Restatement (Second) of Judgments § 27 (1982) that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim").

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE STATE BOARD OF PHARMACY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE EVENLY DIVIDED BETWEEN PETITIONER AND STATE BOARD OF PHARMACY.*

Chief Judge BELL concurs in the judgment only.