*Merryman and Fraternal Order of Police Lodge 146 v. University of Baltimore*, No. 649, September Term 2019

Opinion by Kehoe, J.

**LABOR AND EMPLOYMENT – LABOR CONTRACTS – CONSTRUCTION**

The scope of the statutory dispute-resolution mechanism provided for in the parties' memorandum of understanding was fixed by the General Assembly. A union's suggestion that the parties' memorandum effectively "amended" an incorporated statutory definition to expand the scope of issues grievable under the incorporated statutory procedure is conceptually untenable. Unless the General Assembly provides that statutorily prescribed jurisdictional limits are a mere default, parties cannot expand the jurisdiction of an administrative agency by contract. Md. Code, Educ. §§ 13-201(c), 12-203.

**LABOR AND EMPLOYMENT – DISPUTES – STATUTORY PROVISIONS**

Parties' dispute about the number of holiday-leave hours to which university police are entitled "pertains to the general level of . . . fringe benefits" provided to the officers. Md. Code, Educ. §§ 13-201(c), 12-203.

Circuit Court for Baltimore City
Case No. 24-C-18-006045

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 649

September Term, 2019

_____

KEITH MERRYMAN AND FRATERNAL
ORDER OF POLICE LODGE 146

v.

UNIVERSITY OF BALTIMORE

_____

Kehoe,
Beachley,
Eyler, James R.,
   (Senior Judge, Specially Assigned)
JJ.

_____

Opinion by Kehoe, J.

_____

Filed: July 13, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

The General Assembly has established a grievance procedure to resolve certain disputes between employees and the component institutions of the University System of Maryland. *See* Md. Code, tit. 13, subtit. 2 of the Education Article. The extent to which the scope of this statutory procedure may be altered by mutual agreement is the central question of this appeal.

The question arose after the University of Baltimore altered the work schedules of its police officers in January 2018, shifting them from working five eight-hour days each week to working four ten-hour days. The University and the union representing its police officers, Fraternal Order of Police Lodge 146, disagreed about whether this schedule change affected the number of paid-leave hours officers would receive for holidays throughout the year. The controversy led Lodge 146, through its president, Keith Merryman, to invoke the above-referenced statutory grievance procedure, which had been incorporated into a memorandum of understanding between the parties. Ultimately, the dispute came before an administrative law judge who decided that, under the terms of the parties' agreement, the dispute was subject to the statutory grievance procedure and that the same agreement should be interpreted to give officers ten hours of paid leave for each holiday, corresponding to the number of hours they would have to work if not given off for the holiday. This decision was affirmed in part and reversed in part in a judicial-review action before the Circuit Court for Baltimore City, which concluded the administrative law judge's remedy was unlawful.

Lodge 146's appeal to this Court presents three questions, which we have reworded:

1. Did the administrative law judge err in determining that the officers' complaint was properly before her—that is, that it was a "grievance" subject to resolution through the procedures outlined in Md. Code, § 13-203 of the Education Article?

2. Was the administrative law judge's interpretation of the memorandum of understanding legally correct?

3. Did the administrative law judge have the authority to order the University to award officers paid holiday hours as a remedy for the grievance?[1]

We agree with the circuit court that the administrative law judge committed an error of law. But in our analysis, we identify a different and more fundamental error: the administrative law judge's conclusion that she had jurisdiction to hear this dispute in the first place. Because we hold that the administrative law judge acted in excess of her jurisdiction, the proper disposition of the judicial-review proceeding is to reverse the administrative decision in its entirety. We will therefore vacate the circuit court's judgment and remand the case to it for entry of a judgment consistent with this opinion.

---

[1] Lodge 146's brief presents the three questions thus (formatting altered):

1. Is the issue presented in [Lodge 146's] grievance a matter of contract interpretation?

2. Is the administrative law judge's decision correct as a mater of law, or in the alternative, is it supported by substantial evidence?

3. Does the Office of Administrative Hearings have the authority to grant a remedy for the [union's] grievance?

## Background

*The memorandum of understanding*

This appeal arises from a disagreement over how to interpret part of a memorandum of understanding between Lodge 146 and the University of Baltimore.[2] This agreement outlines key employment terms for University police. Three parts of the memorandum are particularly relevant to this case.

Article 6 of the memorandum addresses officers' work hours. It explains that a "regular workday" for University police consists of eight hours. A "regular workweek" is composed of five regular workdays. The memorandum gives the University flexibility to alter this default eight-by-five schedule when a change is "deemed necessary to meet the operational needs of the University."

Article 15 addresses paid holidays. Officers "are eligible to earn 11 holidays per year, or 12 holidays during a year of general or congressional elections, and any other special observance as required by the legislature and Governor." The paid holidays include major holidays like New Year's Day, President's Day, Martin Luther King, Jr. Day, etc. In addition to these predetermined holidays, police are granted three administrative holidays each year. The memorandum explains that University police, as essential employees, are sometimes required to work on holidays. When this is the case, officers are paid for the full

---

[2] The copy of the memorandum of understanding in the record extract indicates that it expired on June 30, 2017. The grievance at issue in this case was filed on January 25, 2018. We assume that the memorandum of understanding was extended or renewed, as was contemplated by Article 29 of the agreement.

day worked. They are then allowed to use accrued holiday-leave hours to schedule an alternative day off. If rescheduling isn't possible, officers can cash in those hours and receive a day's pay in lieu of taking another day off. The memorandum does not specify how many hours of paid leave officers accrue for each holiday.

Article 11 of the memorandum outlines the procedure for resolving certain types of disputes between the police and the University. It provides (emphasis removed):

> In the event of an alleged violation or disagreement over any of the provisions of this MOU, a bargaining unit employee represented by [Lodge 146] . . . shall have the right to file a grievance in accordance with Section 13-201 et seq., of the Annotated Code of Maryland Education Article, a copy of which is set forth below for convenient reference.

*The statute*

The provisions of the Education Article referenced in and incorporated into Article 11 of the memorandum of understanding outline a three-step procedure for addressing grievances by employees of the University System of Maryland's member institutions. *See* Md. Code, §§ 13-201 to 13-207 of the Education Article ("Educ."). The steps are as follows:

*Step One: Initial conference and initial written decision (Educ. § 13-203(b)):*

> An employee may present a written grievance to his or her department head or designee for formal consideration. Within five days of receiving this written grievance, the parties must hold a conference. The decision-maker must render a written decision within five days.

*Step Two: Appeal of the initial written decision (Educ. § 13-203(c)):*

> The employee may appeal an unfavorable decision to the president of the university or the president's designated representative. The president or his designated representative must hold another conference within ten days of receiving the written grievance appeal and must render a written decision within fifteen days of the conference.

*Step Three: Arbitration or administrative hearing (Educ. § 13-203(d)):*

> If the grievance remains unresolved, the aggrieved employee may submit the grievance to either arbitration or to the chancellor of the University System of Maryland. Section 13-203 of the Education Article authorizes the chancellor to delegate this responsibility to the Office of Administrative Hearings in accordance with the contested-case provisions of the Administrative Procedure Act.

This three-step grievance procedure is available only "[i]f, following informal discussion with [a] supervisor, a dispute remains unresolved." Educ. § 13-203(a). It is also available only if the dispute constitutes a "grievance," defined in the statute as "any cause of complaint arising between a classified employee or associate staff employee and his employer on a matter concerning discipline, alleged discrimination, promotion, assignment, or interpretation or application of University rules or departmental procedures over which the University management has control." Educ. § 13-201(c).[3] The statute specifically excludes from the scope of "grievable" issues complaints that "pertain[] to the general level of wages, wage patterns, fringe benefits, or . . . other broad areas of financial management and staffing." *Id.*

---

[3] The quoted language from Educ. § 13-201(c)'s definition of "grievance" comes from the version of the statute incorporated into the parties' memorandum of understanding. This same language was in effect when the parties went through the three-step grievance procedure outlined in Educ. § 13-203. On October 1, 2019, the General Assembly made minor revisions to the definition of "grievance" under Educ. § 13-201(c). *See* 2019 Md. Laws ch. 697 (changing "between a classified employee or associate staff and his employer" to "between a regular full-time or part-time employee and the University," and recasting the complaints that do not give rise to a "grievable issue" as exclusions from the definition of "grievance"). Those revisions have no bearing on the issue before the Court in this appeal. Accordingly, our opinion quotes only the version of the statute incorporated into the parties' agreement.

*The grievance*

In January 2018, the University significantly changed officers' work schedules. Officers would continue to have, on average, forty-hour workweeks. But instead of spreading those forty hours across five eight-hour days, officers would generally be required to work four ten-hour days each week.[4]

The schedule change—undisputedly within the University's discretion to make—raised an important question: How would the change from eight-hour days to ten-hour days affect the hours that officers accrue for working holidays? Under the earlier system, officers accrued eight hours of holiday leave (a full workday's worth) for each of the holidays specified in the memorandum. Officers could use these hours to take the holiday off or, if they worked the holiday, to schedule an alternate day off or receive an extra day's pay. But with ten-hour workdays, would officers accrue ten hours of holiday leave for each scheduled holiday or would they continue to accrue just eight?

Lodge 146 raised the issue with the University informally, taking the position that officers working ten-hour days should accrue ten hours of holiday leave for each of the holidays guaranteed to them under Article 15 of the memorandum of understanding. When the University rebuffed Lodge 146, saying the accrual of holiday hours would remain

---

[4] While the four-day week is typical, the University's ten-by-four schedule provides that in every seven-week "schedule cycle," an officer would work one five-day week and one three-day week.

unaffected by the change from eight-hour days to ten-hour days, Lodge 146 initiated the three-step grievance procedure outlined in Article 11 of the memorandum.

At all steps of the grievance process, Lodge 146 argued, essentially, that the "holidays" guaranteed to officers under Article 15 of the memorandum of understanding were definitionally linked to "workdays" under Article 6. The agreement linked the terms by guaranteeing officers who work holidays either an alternative "day off" or, if no alternate day is rescheduled, "a regular day's pay." The "meaning of a day," argued Lodge 146, should "be consistently . . . interpreted across the contract." Under the old eight-by-five schedule, when officers "earn[ed] . . . holidays," they accrued a regular workday's worth of leave hours—that is, eight hours of paid leave. So when the University changed the regular workday from eight to ten hours, Lodge 146 said, the University was required by the terms of the memorandum to award officers ten hours of leave for each holiday guaranteed under Article 15. As Lodge 146 noted, with only eight hours of leave accrued for each holiday (or 88 holiday hours per year), officers could not cover all eleven earned holidays with holiday-leave hours. Without ten hours per holiday (or 110 holiday hours per year), officers would have to supplement their holiday leave with other forms of paid leave in order to take each holiday off and receive full pay for that day.

In contrast, the University argued that Article 15 "holidays" were not definitionally linked to Article 6 "workdays." According to the University, the holidays officers earn had always been measured in terms of hours, not days. And the number of leave hours awarded per holiday was not derived from the terms of the memorandum of understanding. Instead,

- 7 -

that number was fixed by a leave policy applied broadly across the University System of Maryland and within the control of the system's board of regents, not University management. According to the University, any reference to "days" in Article 15 of the memorandum was just "shorthand" for eight hours—the typical day worked by University employees. Nothing in the memorandum, the University maintained, provided that a modification in workday schedules would result in an adjustment to the fringe benefits officers received. The University noted that the increase University police sought would give the officers more holiday-leave hours than any other similarly situated employees of the University, even though officers continued to work the same number of hours each year. The University also pointed out that under the more compressed ten-by-four schedule, officers worked fifty-two fewer days a year than they had worked under the traditional eight-by-five schedule.

What is important for this appeal is that, in addition to addressing the merits, the University raised a jurisdictional defense, arguing that the holiday-leave dispute was not subject to the Article 11 grievance procedure in the first place because it was not a "grievance" within the meaning of Educ. § 13-201. We will discuss this argument—and Lodge 146's response to it—in greater detail in our analysis.

We can quickly summarize the procedural history. The University's jurisdictional defense proved successful at steps one and two of the grievance process, where, without reaching the merits of the dispute, the relevant decisionmakers concluded that the dispute was not a "grievance" as the term was used in the memorandum of understanding and the

provisions of the Education Article incorporated therein. But the jurisdictional defense was a loser at step three. The administrative law judge tasked with hearing the grievance denied the University's motion to dismiss the complaint on the basis that the parties' dispute was not subject to the grievance procedure. The issue raised by Lodge 146, concluded the administrative law judge, was "an issue of contract interpretation." And because Article 11 of the memorandum provided that a "disagreement over any of the [memorandum's] provisions" would give an employee the right to file a grievance in accordance with the procedures outlined in Educ. § 13-203, the issue was "grievable."

The administrative law judge ultimately sided with Lodge 146 on the merits too, concluding, after an evidentiary hearing, that "the University unilaterally changed the definition of workday to ten hours and this change applies to the allocation of holiday leave for University police officers." She then ordered the parties to determine the number of holiday hours wrongfully withheld from officers since the ten-by-four schedule took effect so that the University could credit those hours to the affected officers.

The University sought judicial review of the administrative law judge's decision, maintaining that the administrative law judge erred in deciding the issue was "grievable" and, ultimately, in deciding the change to officers' work schedules altered the number of paid holiday hours they were entitled to. The University also argued that even if she could properly hear the case and was right on the merits, the administrative law judge had no authority under the statutory grievance procedures to provide a *remedy* that would "change

the scope of fringe benefits" and "impact the finances and management control of the University."

Convinced, at least, by this third argument, the circuit court reversed the administrative law judge's decision in part and affirmed it in part. The court affirmed the administrative law judge's decision "with respect to the conclusion that on January 3, 2018, the University unilaterally changed the definition of a workday to ten hours and this change affected the allocation of holiday leave for the police officers." But the court reversed "with respect to all other conclusions of the administrative law judge." Per the court, "[p]ursuant to [Educ. § 12-105], neither this Court nor the administrative law judge may issue an order that has the effect of increasing the budget of the University system."[5]

Lodge 146 noted a timely appeal from the circuit court's judgment.

## Analysis

### A. The standard of review

In an appeal from a judgment entered in a judicial-review proceeding, "we bypass the judgment of the circuit court and look directly at the [challenged] administrative decision." *Salisbury University v. Joseph M. Zimmer, Inc.*, 199 Md. App. 163, 166 (2011) (citing *White v. Workers' Comp. Commission*, 161 Md. App. 483, 487 (2005)). In other words, "we perform precisely the same role as the circuit court," *Bray v. Aberdeen Police*

---

[5] The court's opinion did not explicitly address the University's jurisdictional argument, but during argument before the court, the judge commented that the grievance was "proper for the ALJ to hear."

- 10 -

*Department*, 190 Md. 414, 420 (2010), deciding for ourselves whether the administrative agency erred. The scope of our review is limited, however. *See* Md. Code, § 10-222(h)(3) of the State Government Article (listing the limited bases for reversing or modifying an administrative decision). We accord significant deference to an agency's findings of fact, affirming "if there is substantial evidence in the record as a whole to support the agency's findings and conclusions." *Board of License Commissioners for Prince George's County v. Global Express Money Orders, Inc.*, 168 Md. App. 339, 345 (2006) (cleaned up). We exercise *de novo* review an agency's legal conclusions, except that we give some degree of deference to an agency's interpretation of ambiguity in a statue that it regularly "administers." *Blue Buffalo Company, Ltd. v. Comptroller of Treasury*, 243 Md. App. 693, 702 (2019).

All three issues in the present appeal are legal in nature. *See Clancy v. King*, 405 Md. 541, 556–57 (2008) (deciding whether a contract has been correctly interpreted is a question of law); *Spencer v. Maryland State Board of Pharmacy*, 380 Md. 515, 528 (2004) (deciding whether an agency has acted in excess of its jurisdiction is a question of law). And none of these issues involves the interpretation of ambiguity in statutes "administer[ed]" by the Office of Administrative Hearings, in the sense that word was used by this Court in *Blue Buffalo* and similar cases. We therefore exercise *de novo* review, without any deference to the administrative law judge.

B. The dispositive threshold issue: Was this a "grievance"?

We first address the jurisdictional question raised by the parties: Was the dispute between Lodge 146 and the University properly before the administrative law judge?

Article 11 of the parties' memorandum of understanding provides (at the risk of repetition) that "[i]n the event of an alleged violation or disagreement over any of the provisions of [the agreement]," officers "shall have the right to file a grievance in accordance with [Educ. § 13-203]." The agreement then expressly incorporates the relevant provisions of the Education Article, including the statute's definition of "grievance":

> "Grievance" means any cause of complaint arising between a classified employee or associate staff and his employer on a matter concerning discipline, alleged discrimination, promotion, assignment, or interpretation or application of University rules or departmental procedures over which the University management has control. However, if the complaint pertains to the general level of wages, wage patterns, fringe benefits, or to other broad areas of financial management and staffing, it is not a grievable issue.

Educ. § 13-201(c).

The University argues the holiday-leave dispute does not fit within this statutory definition. First, the University says, because the number of holiday-leave hours awarded to employees is fixed by the Board of Regents of the University System of Maryland, the dispute does not arise from the "interpretation or application of University rules or departmental procedures *over which the University management has control*." *Id.* (emphasis added). Second, the University argues, even if the holiday-leave policy were a rule or procedure controlled by University management, Lodge 146's complaint "pertains to the general level of . . . fringe benefits," an issue expressly excluded from those "grievable" under the statutory scheme. *Id.* Because the dispute was not a "grievance"

- 12 -

within the meaning of Educ. § 13-201(c), the University says, the dispute could not be resolved by resort to the statutory grievance procedures specified under Article 11 of the memorandum. The administrative law judge was, therefore, without jurisdiction.

Lodge 146's contentions to the contrary require a bit more unpacking. As we understand it, Lodge 146's argument has three parts.

First, Lodge 146 essentially concedes that the dispute is not a "grievance" within the meaning of Educ. § 13-201. Citing *Walker v. Department of Human* Resources, 379 Md. 407, 422 (2004), which we discuss below, Lodge 146 maintains that by providing for holiday leave in their memorandum of understanding, the parties made it a contractual benefit and in so doing placed holiday leave outside the realm of fringe benefits or other policies "over which the University management has control." Educ. § 13-201. Instead, Lodge 146 argues, this is just a simple contract dispute, "not tied to [University] policy."

Second, according to Lodge 146, that the parties' dispute fell outside the *statutory* definition of "grievance" under Educ. § 13-201(c) is not dispositive. The statutory definition, Lodge 146 maintains, was more or less a default provision whose scope could be modified by the parties. Even though the parties incorporated provisions of the Education Article into their agreement, the agreement "expanded the permissible subjects that could be grieved," Lodge 146 says. Lodge 146 points to the language in Article 11 of the memorandum, which expressly makes the Educ. § 13-203 grievance procedures available "[i]n the event of an alleged violation or disagreement over any of the [memorandum's] provisions." Lodge 146 argues that the holiday-leave dispute, like the

- 13 -

dispute between the parties in *Walker*, is a grievance about contract interpretation subject to the procedures provided for in their agreement.

Third, although it argues the parties "amended" the provisions of the Education Article incorporated into their agreement, Lodge 146 acknowledges that the parties' agreement retained the statutory restrictions on grievable issues. That is, Lodge 146 agrees that the terms of the parties' memorandum continue to exclude from the scope of "grievable issues" complaints that relate to, among other things, "the general level of . . . fringe benefits." Educ. § 13-201(c). Lodge 146's position is simply that this is not a dispute about fringe benefits because the officers "d[o] not dispute the total number of holidays provided." Lodge 146 says it seeks only "to determine how many hours are in a holiday" and underscores that its grievance is "not a grab for 22 additional hours of leave."

In short, Lodge 146 argues that because the dispute falls within the scope of grievable issues under the terms of their agreement (not the statute), and because the dispute is not barred by the applicable statutory restrictions on that scope, the dispute was properly before the administrative law judge.

Resolving the parties' dispute requires us to determine the significance of the Court of Appeals' decision in *Walker*, 379 Md. 407. In that case, employees of the Baltimore City Department of Social Services invoked a statutory grievance procedure under Md. Code, tit. 12 of the State Personnel and Pensions Article, to resolve their claim that the department had wrongfully denied them "standby" pay (a $5.15 hourly rate paid to employees "on call" outside their regular work hours). *Id.* at 416. The Court had to decide whether the dispute

was grievable under the statutory mechanism chosen by the employees or whether, as the Department argued, the employees were required to use a different dispute-resolution mechanism outlined in a memorandum of understanding between the parties. The memorandum's procedure purported to be the exclusive remedy for disputes about how to interpret the parties' agreement, except when those grievances were "otherwise appealable through procedures established by law or regulation." *Id.* at 423. Which mechanism applied was important: The *statutory* procedure chosen by the employees ended, as in the present case, with a contested-case hearing before the Office of Administrative Hearings; the *memorandum's* procedure ended with a contested-case hearing before the State Labor Relations Board (provided for under Md. Code, tit. 3 of the State Personnel and Pensions Article). *Id.* at 412–13.

The Court of Appeals ultimately concluded that the dispute was not grievable under the statutory scheme chosen by the employees. That procedure was limited to disputes "between an employee and the [employer] about the interpretation of and application to the employee of: (i) a personnel policy or regulation adopted by the Secretary [of the Department of Budget and Management]; or (ii) any other policy or regulation *over which management has control.*" *Id.* at 409–10 (emphasis added). Standby pay was specifically addressed in the parties' memorandum of understanding. And, the Court reasoned, once the agency's prior discretionary practice of paying standby pay became a contractual obligation, it was no longer a policy "over which DHR management had control." *Id.* at 422.

- 15 -

For the purposes of our analysis, we can accept Lodge 146's reading of *Walker* insofar as it uses the case to show that by contracting about holiday-leave hours—Lodge 146's theory of what happened here—the parties placed what once might have been a policy *within* the University management's control to one *outside* of that control. *See id.* at 421–423.[6] And, in extremely broad strokes, *Walker* also suggests that when a dispute arises about how to interpret an agreement between two parties, the parties may be required to resort to a dispute-resolution mechanism provided for by the terms of the agreement itself. *See id.* at 422 (holding that a grievance about an alleged failure to award standby pay to employees was "founded solely on the [parties' memorandum of understanding]," which "necessarily triggered the dispute resolution procedure established in [that memorandum]," available, by its terms, "for complaints concerning interpretation or application of the [memorandum]").

---

[6] The University contends the reason why holiday-leave hours are a matter beyond its management's control is because the University System's board of regents establishes the number of holiday-leave hours awarded to university police. On the record before us, we cannot accept this assertion. This seemingly simple issue—whether the board or the management of member institutions determines the number of leave hours employees accrue for each holiday—does not appear to have been resolved anywhere in the three-step grievance procedure.

In its brief, the University asserts that, at the administrative hearing, counsel for Lodge 146 conceded, in the University's words, "that the USM board of regents sets holiday leave for the entire USM." We read the record differently. As we understand the portion of the administrative law judge's decision cited by the University for support, Lodge 146 conceded that the board of regents determines when the guaranteed eleven holidays are observed each year. To agree that the board of regents sets *the dates on which holidays are observed* is not to agree that the board of regents sets *the number of holiday-leave hours awarded* for each holiday.

But no one in *Walker* contended that the dispute-resolution mechanism outlined in the parties' memorandum of understanding—a four-step procedure ending with a contested-case hearing before the State Labor Relations Board, *id.* at 412–13—expanded or otherwise amended the statutorily defined jurisdiction conferred upon the administrative body which would ultimately resolve the parties' dispute. By contrast, Lodge 146's argument in the present case is centered on its belief that the parties could and did confer jurisdiction upon the administrative law judge by expanding the scope of grievances subject to the statutory procedures incorporated into the parties' agreement. The distinction is decisive.

The scope of the dispute-resolution mechanism provided for in the memorandum of understanding between Lodge 146 and the University was fixed by the General Assembly. Lodge 146's suggestion that the parties' memorandum effectively "amended" Educ. § 13-201(c) to expand the scope of issues grievable under the Educ. § 13-203 procedure is conceptually untenable. It is "widely acknowledged" that "parties cannot confer jurisdiction, in its fundamental sense, upon a court by consent." *Stewart v. State*, 287 Md. 524, 527–28 (1980); *see also State v. Walls*, 90 Md. App. 300, 305 (1992) ("Jurisdiction over the subject matter cannot be conferred by consent of the parties . . . ."). For the same fundamental reasons, it seems clear that parties cannot expand the jurisdiction of an administrative agency by contract. We have no reason to believe that the legislature intended that a state college or university could modify by contract the limits imposed upon the grievance process by Educ. § 13-201(c). If the General Assembly had intended to make these statutorily prescribed limits a mere default, it could have said so.

Even if the parties could, by mutual agreement, expand the jurisdiction conferred upon the administrative law judge by the General Assembly, Lodge 146 agrees that it could not grieve a complaint about "the general level of . . . fringe benefits." Educ. § 13-201(c). Clearly, a dispute about the number of holiday-leave hours to which University police are entitled "pertains to the general level of . . . fringe benefits" provided to the officers. Lodge 146's attempt to recast the dispute—stressing that the officers seek only "to determine how many hours are in a holiday"—falls flat. What Lodge 146 sought—and what the administrative law judge ultimately awarded—was that University police officers would receive twenty-two more hours of annual paid holiday leave than the University currently awards employees. To repurpose a phrase from Justice Elena Kagan, "[i]f that does not count as ['pertain[ing] to the general level of . . . fringe benefits,'] we are hard pressed to know what would." *Chaidez v. United States*, 568 U.S. 342, 353 (2013).

## C. The remaining issues

Because we hold that the administrative law judge was without jurisdiction to adjudicate the dispute between Lodge 146 and the University of Baltimore, we need not address the merits of her decision or the propriety of the remedy she ordered.

## Proceedings on remand

The circuit court affirmed the administrative decision in part and reversed in part. It affirmed the administrative law judge's finding that "the University unilaterally changed the definition of a workday and this change affected the allocation of holiday leave for the police officers" employed by the University. The court reversed "all other conclusions of

the administrative law judge." But because she didn't have jurisdiction over the grievance, the administrative law judge had no authority to make any findings of fact or conclusions of law. Therefore, the appropriate disposition of this judicial-review proceeding is to remand the case to the administrative law judge with instructions for her to dismiss the grievance proceeding. We remand the case to the circuit court so that it can enter judgment accordingly.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS VACATED AND THIS CASE IS REMANDED TO THAT COURT FOR ENTRY OF A JUDGMENT CONSISTENT WITH THIS OPINION. APPELLANT TO PAY COSTS.**