710 A.2d 391

**MARYLAND STATE BOARD OF SOCIAL WORK EXAMINERS**

v.

**Lynn S. CHERTKOV,**

**No. 1269, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

June 1, 1998.

Jane E. Pilliod, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Joseph L. Bianculli, Arlington, VA (Stephen W. Swartz, Bethesda, on the brief), for appellee.

Argued before MOYLAN, THIEME and BYRNES, JJ.

THIEME, Judge.

Appellee Lynn S. Chertkov filed on 8 February 1995 a petition for review of an order of the State Board of Social Work Examiners (the Board) imposing sanctions on her for multiple violations of the Health Occupations Article. The Circuit Court for Montgomery County adopted every one of the Board's findings of fact, but it determined that the six-month suspension of appellee's license to practice social work was arbitrary and capricious. The court modified the Board's sanction by reducing the suspension period to one month and subsequently denied the Board's motion to alter or amend judgment. The Board noted this appeal in a timely fashion and presents the following questions, which we have recast as bifurcated:

1. Did the circuit court err in its determination that the suspension portion of appellee's sanction was arbitrary and capricious?
2. Did the circuit court err in its reduction of the suspension period to one month?

The answer to the first question is affirmative, and we reverse without addressing the second.

## FACTS

Appellee is a social worker licensed by the Board of Social Work Examiners. In 1981, she and her then-husband, Keith Wagner, who is also a licensed social worker, formed an organization called the Montgomery County Family Life Center (the Center) to provide therapeutic counseling for severely disturbed children and their families. Appellee was President and Executive Director of the Family Life Center and was responsible for clinic supervision, while Wagner served as Vice President and Clinical Director and was responsible for billing. The Center applied for and received in October 1982 status as a provider in the Maryland Medical Assistance Program, commonly referred to as "Medicaid." Medicaid regulations require that any service billed to the Medicaid program must be provided to the person whose name appears on the Medicaid card, on the stated date, and in the manner

prescribed. These regulations also require the provider to make and keep contemporaneous notes of all individual and group therapy sessions.

The Center utilized several irregular billing practices, most of which were masterminded and carried out not by appellee but only by Wagner and Ms. Jane Margolius, the Center's billing clerk. For example, the Center had a policy to bill Medicaid for a scheduled therapy session if notice of cancellation was not received forty-eight hours prior. In light of other billing practices, however, such a policy seems hardly necessary. Services were regularly billed to Medicaid in conformity with each patient's treatment plan but regardless of whether the specific service billed was actually performed. Group therapy was billed for each patient assigned to the group but without consulting attendance records and regardless of whether the patient actually attended. Some group therapy sessions were billed for patients who the Center knew were no longer attending at all. Some individual therapy sessions occurring at a time when the patients' Medicaid numbers were invalid were billed as occurring months earlier. Under a concept called "intensity of service," individual therapy sessions were billed for individual attention during group sessions or for school visits, telephone visits, and even discussions in staff meetings. Medicaid was often billed in advance of service even if the service was never provided, and billings were submitted for days on which the entire Center was closed. Individual therapy sessions were once billed for those patients whose parents attended a Center party.

In 1984, at a time before the institution of many of the above billing practices, the State Medicaid program conducted a limited inquiry into the Center's practices. The State requested that the Center provide treatment records for ten Medicaid patients. The Center, however, did not have a policy of making treatment records for every individual visit and instead supplied the patients' treatment plans. The State informed the Center that such documents were not sufficient and that it needed to provide the contemporaneous notes regarding treatment. The Center staff thereupon recreated

the notes for the required patients and dates and sent the information to the State. The State closed its inquiry with no further action.

In 1989, the State began a separate audit and requested treatment records for twenty-six patients. For a variety of reasons, these records were not complete. Appellee directed the staff to reconstruct the requested notes as best they could remember, but she never specifically instructed anyone to create phony notes. One therapist informed appellee that he would not create notes concerning some non-existing treatment sessions with appellee's daughter, who was a regular patient at the Center. Appellee herself created the fraudulent notes concerning her daughter's non-existent sessions. There is no evidence she participated in any other aspect of the record reconstruction. After the notes were sent to the State, appellee circulated a memorandum to the staff outlining the manner in which therapy notes were to be made in the future. The memo instructed them never to indicate an absence in their notes but instead either to leave a blank space at the date of the absence or to write in some information about the child.

On the basis of the documents provided, the State suspected fraud and executed a search warrant, seizing documents, clinical files, and computers from the Center. Among the documents were several incriminating communications between Wagner and Margolius detailing their fraudulent billing practices. Criminal charges were filed against Wagner, Margolius, and appellee. Margolius pled guilty to felony Medicaid fraud in December of 1990. Wagner followed suit in June of 1991, agreeing to plead guilty to Medicaid fraud and conspiracy to commit Medicaid fraud. Both agreed to testify against appellee as part of their plea agreements. Appellee pled guilty to one count of misdemeanor Medicaid fraud for collateral billing [1] and entered an *Alford* plea to one misdemeanor count of conspiracy to commit Medicaid fraud.

---

1. Collateral billing is the practice of billing a Medicaid recipient for services rendered to a relative who is not Medicaid-eligible. Appellee

The Board then filed disciplinary charges against appellee, alleging four violations of the Health Occupations Article. The specific charges were that she

"Violate[d] the code of ethics adopted and published by the Board," Md.Code Ann., Health Occ. § 19–311(7);

"[Wa]s convicted of or pleaded guilty or nolo contendere to a felony or to a crime involving moral turpitude, whether or not any appeal or other proceeding is pending to have the conviction or plea set aside," id § 19–311(8);

"Willfully ma[de] or file[d] a false report or record in the practice of social work," id. § 19–311(12);

"Submit[ted] a false statement to collect a fee," id. § 19–311(14).

Administrative Law Judge (ALJ) Merry C. Hudson made over two hundred findings of fact in the course of determining that appellee had violated subsections (7), (8), and (13), but that insufficient evidence existed to find a violation of subsection (12). At that time, the Board's prosecutor did not request any specific sanction. The ALJ noted that appellee's violations "must be considered serious" and that her behavior "adversely affects the public interest and reflects poorly on the profession." On the other hand, the ALJ noted that except for the instant case appellee had "an exemplary record," and commented on "the innovative treatment programs [appellee] established at the Center, as well as her personal commitment and dedication to the service of her clients." After considering the nature and severity of the violations and weighing them against the mitigating evidence, the ALJ recommended that appellee's license be suspended for one year and that she be placed on probation for two years.

Appellee filed exceptions to the ALJ's recommendation with the full Board, and although she argued that there was no basis for such "a significant sanction," she did not make a specific exception to the length of the sanction. After a

---

billed Medicaid $461 for treating a Medicaid-eligible child, when treatment was actually provided to the child's mother. Collateral billing is allowable under certain circumstances not here present.

hearing, the Board adopted all of the ALJ's findings of fact and analysis except with respect to the sanction. Without expressing any specific disagreement with the ALJ regarding the sanction and, in fact, after repeating substantially all of the ALJ's analysis thereon, the Board stayed six months of the one-year suspension and retained the two year probationary period.

Appellee filed a petition for review in the circuit court, challenging each finding of a violation and also arguing that the sanction was arbitrary and capricious for being disproportionate to the sanction imposed on Wagner. Appellee claimed Wagner had received only a thirty-day suspension, and characterized her own suspension as "twelve times" as severe. Her argument was that the Board had punished her for refusing to bargain for a sanction, in contrast to Wagner, who apparently had bargained for a reduced sanction. She further alleged that the Board improperly adopted the rationale set forth in a single sentence of the Board prosecutor's responsive brief before the Board:

> The fact that other participants in the Medicaid scam admitted liability and entered into an agreement, whereby they received less punishment tha[n] [appellee], who is either in denial or has deluded herself and chose not to negotiate an agreement with the Board, should have no bearing on the ALJ's and, subsequently, the Board's sanctioning the misconduct committed.

The Board responded to this argument by asserting that the circuit court did not have any factual basis on which it could find appellee's sanction to be disproportionate to the one imposed on Wagner, because the record contained "no indication of the terms of any sanction given to Mr. Wagner."

The circuit court upheld every aspect of the Board's decision except the sanction. In that regard, the court stated, "[I]t strains belief that the Board would mete out a suspension six times longer to [appellee] than to the perpetrator of the actual frauds [Wagner], who displayed flagrant disregard for Medicaid regulations, the Board's Code of Ethics, and the law."

The court found both sufficient evidence of Wagner's sanction and sufficient preservation of the issue in a single transcript reference to Wagner's 30–day suspension made by counsel for appellee during opening arguments at the exceptions hearing before the Board. As for the prosecutor's statement in his responsive brief to the Board, the court wrote, "This statement raises the troubling possibility that the Board might have thought it permissible to sanction Petitioner more severely because she exercised her statutory rights and did not admit responsibility." The court claimed that the Board had determined that appellee's sanctionable conduct was not as extensive as that of either Wagner or Margolius. Considering this in light of appellee's good reputation and dedication to her clients, the court found, "[T]he imposition of a one year suspension, with six months stayed, was arbitrary and capricious." Thereupon, the court modified the suspension such that all but thirty days of the one year period was stayed. The sanction was upheld in all other respects.

## DISCUSSION

The Board alleges that the sanction it imposed is neither arbitrary nor capricious and that the lower court erred in comparing it to a separate sanction concerning separate facts, the terms of which were not factually supported in the record. Appellee responds that the circuit court properly evaluated the relative severity of the two sanctions and that its finding of arbitrariness and capriciousness is adequately supported by the record.[2]

 Judicial review of the Board's final decision is authorized by Md.Code Ann., Health Occ. § 19–313(b), and is to be governed by the Administrative Procedures Act, Md.Code

---

2. There is no allegation before us that the Board failed adequately to articulate why the instant sanction was an appropriate exercise of its discretion. Consequently, we have no occasion to consider any application of *Maryland State Retirement Agency v. Delambo,* 109 Md.App. 683, 675 A.2d 1018 (1996).

Ann., State Gov't § 10–222. According to subsection (h) of the latter statute, a reviewing court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of he final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error or law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

Our role in reviewing an administrative agency decision is precisely the same as that of the circuit court, and we apply the same standards of review as those applied below. *Department of Health and Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899 (1994). Judicial review of agency action has been described as "narrow." *United Parcel Serv. v. People's Counsel for Baltimore County,* 336 Md. 569, 576, 650 A.2d 226 (1994). Review is generally restricted to the evidence developed before the agency, although in some circumstances the circuit court may receive additional evidence of arbitrary or capricious action. *Ad + Soil, Inc. v. County Comm'rs of Queen Anne's County,* 307 Md. 307, 321–22, 513 A.2d 893 (1986). Final agency decisions are presumptively correct, and a court must show deference both to findings of fact and drawings of inferences by an agency. *Liberty Nursing Ctr., Inc. v. Department of Health and Mental Hygiene,* 330 Md. 433, 442–43, 624 A.2d 941 (1993). A court should never substitute its own judgment for that of the agency. *Bernstein v. Real Estate Comm'n,* 221 Md. 221, 230–32, 156 A.2d 657 (1959).

■ We review here only the severity of the sanction imposed by the Board, as no other appeals have been taken

from any other aspect of the case, and our primary concern is the "arbitrary or capricious" standard contained in § 10–222(h)(3)(vi). In many prior cases, the "arbitrary or capricious" standard is treated as nothing more than the default status resulting when an agency action fails either the substantial evidence test or the legality tests contained elsewhere in subsection (h)(3). *See, e.g., Moseman v. County Council,* 99 Md.App. 258, 262, 636 A.2d 499 (1994); *Mortimer v. Howard Research,* 83 Md.App. 432, 441, 575 A.2d 750 (1990). The substantial evidence test is applied to agency findings of fact and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doctors' Hosp. v. Maryland Health Resources Planning Comm'n,* 65 Md.App. 656, 501 A.2d 1324 (1986). Perhaps because the lion's share of our administrative law cases involves review of agency factual findings, we often describe the reviewing court's role as limited to determining solely whether the agency's action is supported by substantial evidence and is not contrary to law, without even mentioning the arbitrary or capricious standard. *E.g., United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994). We have sometimes even collapsed the legality test into the mix and referred to the product as the "fairly debatable test":

> In making a determination of whether the Board of Appeals' decision is arbitrary, illegal or capricious, the reviewing court must decide whether the question before the agency was fairly debatable. An issue is fairly debatable if reasonable persons could have reached a different conclusion on the evidence and, if so, a reviewing court may not substitute its judgment for that of the administrative agency. The fairly debatable test is analogous to the clearly erroneous standard under Rule 8–131(c) and a decision is fairly debatable if it is supported by substantial evidence on the record taken as a whole.

*Mortimer,* 83 Md.App. at 441, 575 A.2d 750.

The instant case is somewhat out of the ordinary because we are reviewing an agency's selection of a specific

sanction from the wide range of possibilities before it. Under Health Occ. § 19–311, the Board is authorized to "reprimand any licensee, place any licensee on probation, or suspend or revoke a license" if any one of sixteen types of misconduct occurs. There are no further statutory restrictions or guidelines imposed on the exercise of the Board's discretion in this regard. As is true for all professional licensing boards, the disciplinary actions of the Board of Social Work Examiners are supposed to be "a catharsis for the profession and a prophylactic for the public," not a punishment. *McDonnell v. Comm'n on Medical Discipline,* 301 Md. 426, 436, 483 A.2d 76 (1984). Yet the law gives broad discretion to the Board to select the appropriate sanction for professional misconduct, and this species of discretion is quite different in nature from that involved in the more common "up-or-down" types of agency decisions, such as making factual determinations or deciding whether to grant a particular petition. In cases of the former, broader type of agency discretion, the arbitrary or capricious test may provide a level of judicial review beyond that provided by the substantial evidence test, which is primarily designed for reviewing the latter type of agency action.

Even in cases reviewing the severity of agency sanctions for arbitrariness or capriciousness, some Maryland cases have disposed of the entire issue purely on the basis of whether the decision to impose a sanction satisfies the substantial evidence test. *Board of Educ. of Prince George's County v. Waeldner,* 298 Md. 354, 363–64, 470 A.2d 332 (1984); *Hoyt v. Police Comm'r of Baltimore City,* 279 Md. 74, 90–93, 367 A.2d 924 (1977). In doing so, the Court appears not to be reviewing the degree of the sanction at all. In other cases, however, the Court has applied the arbitrary or capricious standard to review the severity of a sanction, even though the decision to sanction satisfies the substantial evidence test. *Resetar v. State Bd. of Educ.,* 284 Md. 537, 561–63, 399 A.2d 225 (1979). In *Resetar,* for example, the Court of Appeals upheld an agency sanction against the charge that it was too severe under the circumstances of the case. The Court noted, "It is impossible to catalogue just what would or would not consti-

tute arbitrary action on the part of an agency ... in imposing sanctions, since each situation must be judged on its own facts." *Id.* at 562, 399 A.2d 225. Other viable theories of arbitrary or capricious sanctions may include taking improper information into consideration in selecting the sanction, *id.* at 561–62, 399 A.2d 225, or deviating unexplainedly from prior established precedents. *Eaton v. Rosewood Ctr.,* 86 Md.App. 366, 374–76, 586 A.2d 804 (1991) (citing *Montgomery County v. Anastasi,* 77 Md.App. 126, 137, 549 A.2d 753 (1988)).

■ Appellee's argument is that it was arbitrary or capricious for her sanction to be more severe than that imposed on Wagner because Wagner was "more culpable" than appellee in engaging in the fraud at the Center. We first point out that, to the degree that this issue is at all dependent on the substantial evidence test, we find ample evidence in the record to support the imposition of the one-year suspension with six months stayed plus the two-year probationary period. The appropriateness of this particular sanction was "fairly debatable," as is demonstrated by the fact that the ALJ originally suggested no six-month stay during the year's suspension.

■ We reject the lower court's efforts to ascribe an improper motive to the Board via the Board prosecutor's written brief. We review the agency's decision, not arguments before the agency. *Williams v. McCardell,* 198 Md. 320, 330, 84 A.2d 52 (1951) ("[O]rdinarily courts are concerned with results rather than methods. They review the action, not the opinion, of the board."). The Board's decision is supported by substantial evidence and indicates no improper considerations. It was error to read any external statement into the Board's decision. Furthermore, the lower court interpreted the prosecutor's statement as if it evinced a desire to punish appellee for failing to engage in bargaining, but such a reading is precisely the opposite of what the plain language of the statement imparts. The statement posits that any bargaining engaged in by others "should have no bearing on" appellee's sanction, *i.e.,* that appellee should be sanctioned based on the circumstances of her own case and not with reference to any other case.

This statement affords no basis for concluding that the Board improperly sought to punish appellee for failing to engage in bargaining.

 Appellee's argument of disparate treatment is dependent upon demonstrating that her sanction is actually harsher or more severe than Wagner's; the claim must fail due to the lack of any evidence in the record setting forth the terms of Wagner's sanction. The lower court relied exclusively on an oral statement made by counsel for appellee in argument before the Board. Oral arguments are not evidence. *Oken v. State*, 343 Md. 256, 317, 681 A.2d 30 (1996). There is nothing else in the record showing the terms of Wagner's sanction. A substantially similar situation was present in *Eaton*, when the appellant claimed that the Secretary of the Department of Personnel's decision to intervene in the case was an arbitrary or capricious act, since the Secretary had never before intervened in any other case. We noted, "[Appellant's] argument fails for several reasons, not the least of which is the fact that the record is devoid of any evidence concerning the frequency, or, for that matter, infrequency with which the Secretary has overruled the decisions of [the Secretary's Designee]." 86 Md.App. at 375, 586 A.2d 804.

We are aware that appellee provided the circuit court with a copy of a public notice of Wagner's thirty-day suspension as an exhibit to a reply brief, but that document never became part of the record. The lower court was sitting as a reviewing court and could not consider new evidence, except according to § 10–222(f) of the Administrative Procedure Act, which was not invoked here and which would have required a remand. Even if the lower court could have re-opened the record to admit new evidence, there is nothing to indicate that it did so, and the court in its memorandum declined to place any reliance on this document. Similarly, when the Board finally submitted a copy of Wagner's actual sanctioning document as an exhibit to its motion to alter or amend the court's judgment, such evidence was not properly entered into the record. Because the record contains no evidence of the terms of

Wagner's sanction, appellee's claim that her sanction is out of all proportion to Wagner's sanction cannot be sustained.

■■■ There are, of course, other problems with appellee's argument, which we address briefly. Sanctioning is primarily individualized in nature; there is no right to receive the same sanction as a co-participant in the underlying misconduct. *See Hoyt*, 279 Md. at 88, 367 A.2d 924. Moreover, the record indicates that appellee and Wagner engaged in very different types of misconduct and were not necessarily being sanctioned based on the same acts. The Board adopted ALJ findings that appellee engaged in collateral billing, fabricated therapy notes for her daughter's billing records, and instructed the staff never to note a patient's absence. There is no finding that Wagner took part in these acts. Wagner and Margolius engaged in long-term fraudulent billing practices, of which appellee apparently knew nothing. The record does not even indicate the specific violations supporting Wagner's sanction, nor which specific acts constituted such violations. Under these circumstances, there is no basis for directly comparing the severity of the respective sanctions. Contrary to appellee's contentions and the lower court's findings, there is no indication from the record that the Board found Wagner's misconduct to be "more culpable" than appellee's in any relevant sense. Furthermore, the Board may have (and should have) based its sanctions on all the circumstances of the two cases before them and not just on the parties' conduct. Appellee alleges that Wagner bargained with the Board for a consent sanction, and, if true, this fact alone could support a decision by the Board to impose a lesser sanction on Wagner than he would have otherwise received, further attenuating the comparability of Wagner's and appellee's sanctions.

We also note that, having had the opportunity to review the terms of Wagner's sanction even though it is not a part of the record, it is by no means clear that his sanction is less harsh than appellee's. The lower court focused only on the duration of the respective license suspensions, but the complete sanction also includes probationary restrictions, which differ great-

ly. Appellee's probationary period is two years in duration and commences at the end of her license suspension. With the successful completion of probation, she may petition for full re-instatement. Wagner's probationary period began immediately and is indefinite, although he may petition to terminate his probation after three years. While both were instructed to take an ethics course, Wagner was also forced to take a business course. While both were to be supervised by a mentor, Wagner was also subjected to a therapist's supervision. Unlike appellee, Wagner may be immediately suspended from practice with only twenty-four hours notice upon recommendation by either his mentor or his therapist. With Board approval, his therapist or mentor may demand additional probationary restrictions. His license is made explicitly revocable upon the occurrence of any further violation, and even when he petitions to end his probation after three years, the Board reserved the right to make further modifications. Wagner is clearly subjected to more thorough supervision over a longer probationary period, but the lower court apparently was not aware of this aspect of the sanctions when it determined from the limited record that appellee was sanctioned "more severely" than Wagner.

Because there is no basis in the actual record for the lower court's conclusion that appellee's sanction was any more severe than Wagner's, appellee's claim that the Board's sanction was arbitrary or capricious fails. We reverse the lower court's order and remand with instructions to affirm the Board's order. We thus have no occasion to address the Board's further argument.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO AFFIRM THE ORDER OF THE STATE BOARD OF SOCIAL WORK EXAMINERS.**

**COSTS TO BE PAID BY APPELLEE.**